UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA- MIAMI DIVISION
CASE NO: 1:10-cv-21549-ASG

RECREATIONAL DESIGN           /
CONSTRUCTION, INC. a Florida
Corporation,

         Plaintiff,

vs.

WISS, JANNEY, ELSTNER AND
ASSOCIATES, INC., a foreign corporation;
JOHN F. DUNTEMANN, individually; B.D.
AGARWAL & ASSOCIATES, INC., a
foreign corporation, and Dr. BHAGWAN D.
AGARWAL, individually,

         Defendants.

---

**<u>DEFENDANTS WISS, JANNEY, ELSTNER ASSOCIATES, INC. AND JOHN. F.
DUNTEMANN'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF
LAW</u>**

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and Rule 7.1 S.D. Fla. L.R.

Defendants Wiss Janney, Elstner Associates, Inc.[1] and John F. Duntemann (collectively "Wiss,

Janney"), hereby move to dismiss the claims against them for failure to state a claim, and as

grounds therefor states:

## I.  INTRODUCTION

Plaintiff is a designer/builder that designed and installed a water slide in and for the City

of North Miami Beach (the "City").  Because cracks were observed in that slide, the City hired

Wiss, Janney to investigate the condition and safety of the slide.  Plaintiff is seeking to recover

from Defendants what it was not entitled to recover from the City, the entity with which it had a

---

[1] Plaintiff has mistyped Wiss, Janney, Elstner Associates, Inc.'s name in the caption.

contract.  The claims are unprecedented as a matter of law.  Plaintiff seeks damages because the City demanded that it rebuild a water slide that was constructed improperly.  Having failed to pursue or prevail in its recovery against the entity with which it was in privity (the City), Plaintiff now has set its sights on attempting to recover from Defendants.  These Defendants owed no legal duty to Plaintiff, did not breach any standard of care by the issuance of any opinions to the City, and did not cause any damages to Plaintiff.  Plaintiff's allegations fail to state a claim upon which relief can be granted, and the Complaint should be dismissed.

## II.  FACTUAL BACKGROUND

This action arises out of Plaintiff's improper performance of a design/build contract with non-party City of North Miami Beach for the "Victory Pool Renovations."  *See* Complaint, Ex. A.  After Plaintiff designed and constructed renovations pursuant to its contract with the City. Complaint ¶8, the City retained Wiss, Janney to review certain aspects of the renovation, specifically including a water slide. Complaint ¶10.  Wiss, Janney issued a report of its findings to the City.  Those findings included a determination that the water slide was structurally unsafe. Wiss, Janney opined that the City should replace the water slide.  Complaint ¶11.  The City notified Plaintiff of the conclusion and instructed Plaintiff to replace the water slide.  Complaint ¶13.  Plaintiff disagreed with Wiss, Janney's conclusions and obtained reports from different experts which reached a contrary conclusion. ¶14.

According to Plaintiff, despite receipt of Plaintiff's reports, it was the City that "required that [Plaintiff] build and re-install a new water slide at the Project due to its 'public disclosure of [Wiss, Janney and co-defendant's] findings and evaluations.'" Complaint ¶15.  Plaintiff apparently replaced the water slide and then filed this action. Plaintiff purports to allege two claims against Wiss, Janney - one for professional malpractice and one for negligent

14478747v1  911553  10902

misrepresentation.   Plaintiff alleges two identical claims against Duntemann, who was Wiss, Janney's licensed engineer.  Complaint ¶11.

### III.  PLAINTIFF'S CLAIMS ARE BARRED BY THE ECONOMIC LOSS RULE

Initially, all of Plaintiff's claims are absolutely barred by the economic loss rule. Pursuant to its contract with the City, Plaintiff's claims are governed by Florida law[2] and,  as was made clear by the Florida Supreme Court in Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532 (Fla. 2004):

> The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses.
>
> The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic losses in tort. [citation omitted].  Underlying this rule is the assumption that the parties to a contract have allocated the economic risk of nonperformance through the bargaining process.  A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made.

Id. at 536.  Plaintiff's claims are exactly the type which are intended to be prevented by the economic loss rule because Plaintiff is attempting to evade the duties to which it is bound under its contract with the City.  Under the contract with the City, both Plaintiff and the City had rights and remedies.  As set forth by Plaintiff, the City exercised its contractual rights and demanded that Plaintiff replace the water slide.  By this action, Plaintiff is endeavoring to create a better bargain for itself by attempting to obtain tort remedies from Wiss, Janney although it would not be entitled to such damages from City.  Plaintiff cannot be permitted to so easily circumvent the terms of its contract, as made clear by the court in Plourde Sand & Gravel Co. v. JGI Eastern, Inc., 917 A.2d 1250 (N.H. 2007), a case with virtually identical facts to those here.

3

In Plourde, a contractor hired the plaintiff to supply gravel for the base of a private roadway it was constructing.  The town in which the road was to be built then hired the defendant engineers to inspect the gravel.  The engineers inspected the gravel and reported to the town that it was insufficient to meet the town's specifications.  Plaintiff replaced the gravel, but later conducted its own tests and determined that the initial gravel did meet the town's specifications.  Plaintiffs then sued the engineers for the cost of replacing the gravel.  In addressing the application of the economic loss rule to those facts, the court in Plourde affirmed dismissal of the claim stating:

> "A growing number of states have refused to apply the 'economic loss' rule to actions against design professionals when there is a 'special relationship' between the design professional and the contactor." [citation omitted]. This is sometimes referred to as the "professional negligence" exception. [citation omitted]. Such a relationship is different than that required in a traditional tort negligence claim, since the plaintiff in tort is alleging economic loss, a recovery that is traditionally allowed only in contract.  We have likened the duty owed in such a relationship to that owed by a promisor to an intended third-party beneficiary. …. These cases hinge upon the presence of an independent duty owed to the plaintiff because of the nature of the "special relationship" with the defendant.  They are narrow exceptions to the rule and properly so.  We have declined to extend the special relationship principle beyond the circumstances in the [third party beneficiary context].
>
> * * *
>
> Here the relationship of the parties and the facts before the trial court differ dramatically from any case that has heretofore warranted application of an exception to the privity requirement for economic loss recovery. … We reject the plaintiff's invitation to impose a duty on the defendant in such a situation. **Were we to do so, there is no principled limit to liability.** [citation omitted] Moreover, permitting economic loss recovery in tort here would blur the distinction between contract and tort law. **The plaintiff is essentially alleging that the defendant negligently performed its duties under its contract with another party and that, as a result, the plaintiff has lost the benefit of its bargain…**"
>
> [P]laintiff's expectations are rooted in its contract with [the general contractor]. The economic loss plaintiff suffered in removing and replacing the gravel arose

---

[2] See, Paragraph 10.1 of Exhibit A to the Complaint.

14478747v1 911553 10902

> "solely from disappointed commercial expectations" in that the plaintiff "lost the anticipated profits of its contract with [the contractor]." Imposing a tort duty upon the defendant in this case would disrupt the contractual relationships between and among the various parties. This we are unwilling to do. Accordingly, we find no "special relationship" between the plaintiff and the defendant such that the defendant owed to the plaintiff an independent duty in tort to prevent economic loss.

Id. at 1255-1256 (emphasis added). Other courts have reached similar conclusions.

In Association of Apartment Owners of Newton Meadows v. Venture 15, Inc., 167 P.3d 225 (Haw. 2007), an owner's association sued numerous parties, including a masonry subcontractor, alleging defective construction of an apartment complex. In addressing the claims against the subcontractor, the Court stated:

> Here, it appears that [the association]'s negligence claims against [the subcontractor] are based on [the subcontractor's] alleged violations of (1) contract specifications and (2) the Uniform Building Code. …Similar to the plaintiff in Plourde Sand, the [association] is essentially alleging that [the subcontractor] "negligently performed its duties under its contract with another party and that, as a result, the [association] has lost the benefit of its bargain with the vendor." Where [the subcontractor] and [the general contractor] have allocated the risks and benefits of performance of their contract, we would upset that allocation were we to impose tort liability on [the subcontractor]. Stated differently, "imposing a tort duty upon the defendant in this case would disrupt the contractual relationships between and among the various parties." Consequently, we agree with those jurisdictions that bar economic recovery in negligence where there was no privity of contract between the plaintiff and the defendant when allowing such would blur the distinction between contract and tort law. … Indeed, as we have previously recognized, "the construction industry in particular would suffer" "if tort and contract remedies were allowed to overlap" and "the fees charged by contractors are founded on their expected liability exposure as bargained and provided for in the contract." In our view, [the associations'] negligence claims – specifically, those *based on violations of contact specifications* - fall within the purview of the economic loss rule as set forth above.

Id. at 285 (internal citations omitted).

As in Plourde and Venture 15, there was no "special relationship" between Plaintiff and Wiss, Janney under the facts here. Plaintiff and Wiss, Janney were not in privity with each other. There was no contract between them. No duty was owed by one to the other. Rather, Plaintiff's

14478747v1  911553  10902

claims against Wiss, Janney is rooted in Plaintiff's contract *with the City* and the economic loss Plaintiff claims to have suffered arises solely from its alleged loss of the anticipated profits of that contract.  Simply put, Plaintiff is seeking to recover its lost benefit of its bargain with the City as a result of its failure to build the water slide in accordance with the requirements of public safety.  If Plaintiff objected to reconstructing the water slide, it had options to either not rebuild it or seek to recover contractual amounts owed – including any amount for additional work requested by the City.  Imposing any sort of liability upon Wiss, Janney in these circumstances would disrupt the separate contractual relationships between Plaintiff and the City on the one hand and Wiss, Janney and the City on the other.  Plaintiff's attempt to recover what it could not pursuant to its own contract should be rejected.

### The Exception for Professional Negligence Does Not Apply

Wiss, Janney acknowledges that Florida cases have expressly established an exception to the economic loss rule for claims "against a professional for his or her negligence even though the damages are purely economic in nature and the aggrieved party has *entered into a contract with* the professional's employer."  Moransais v. Heathman, 744 So.2d 973, 983 (Fla. 1999) (emphasis added).  However, that exception has never been applied in circumstances in which the claimant did not have a "special relationship" with the professional.  For example, in Moransais, the claimant was a home-owner **for whose benefit** a home inspection was completed by the professionals; in Witt v. La Gorce Country Club, Inc., 2009 WL 1606437 (Fla. 3d DCA June 10, 2009), the defendant was a geologist who designed a reverse osmosis water treatment **for the claimant;** and in Vesta Construction and Design, LLC v. Lotspeich & Assoc., Inc., 974 So.2d 1176 (Fla. 5th DCA 2008), the defendant was an ecologist who had performed an analysis

6

14478747v1 911553 10902

CASE NO: 1:10-cv-21549-ASG

of certain land **for the benefit of the plaintiff**.[3]  No such circumstances exist here, and this Court should determine that the economic loss rule bars Plaintiff's claims.

## IV.  PLAINTIFF CANNOT STATE A CLAIM FOR PROFESSIONAL MALPRACTICE

Even if this Court does not determine that the claims are barred by the economic loss rule, Plaintiff has nevertheless failed to state a claim for professional malpractice in Counts I and III.  Plaintiff alleges that Wiss, Janney is guilty of professional malpractice because it "had a duty to exercise a degree of care and skill in the evaluation, testing and Reports provided to the City," and breached that duty by "failing to exercise that degree of care and skill as would be exercised by other reasonably skilled engineers practicing in the State of Florida" and "failing to properly evaluate and test the Water Slide…" Complaint at ¶¶ 20, 21.  Plaintiff claims to have suffered damages.  Complaint ¶16.  However, these Defendants owed no duty to Plaintiff, and Plaintiff's alleged damages are the costs Plaintiff incurred in re-building and re-installing the water slide in accordance with its contractual obligations owed to the City and to public safety.

---

[3] Although the person sued in <u>Vesta</u> was not a "professional," the case is instructive.  There, a land developer sued an ecologist and his employer for negligence in conducting an environmental assessment of property the developer wanted to purchase and develop.  Based on the assessment the developer decided not to buy the property, but later learned that another person had purchased the property and developed more of it than the ecologist indicated was developable.  The developer sought damages in the form of its potential lost profits.  In upholding dismissal of the claims against the ecologist, the court said:

> For two reasons, we hold that when suit is barred against a corporation by the contractual privity economic loss rule, the contracting party cannot bypass the rule by suing corporate employees for their negligent performance of the contract.

> First, the policy reasons supporting the rule dictate this result.  As previously explained, the whole reason for the economic loss rule in this context is 'to protect the integrity of the contract. [citation and quotation omitted].  Given that a corporation can only act through it employees, [citation omitted], it would completely undermine the contractual privity economic loss rule to allow any party which contracts with a corporation to avoid the rule by simply bringing its tort claim against the corporate officers or employees tasked with performing the contract on behalf of the corporation.

> Second, the rule that we have expressly stated here is unequivocally implied in other controlling cases.  The clearest case in <u>Moransais v. Heathman</u>, 744 So.2d 973 (Fla. 1999).

14478747v1 911553 10902

CASE NO: 1:10-cv-21549-ASG

Plaintiff's facts cannot support a claim against these defendants who acted as consultants to Plaintiff's opposing contractual party – the City.

Plaintiff's allegations fail to state a claim because  "[u]nder the traditional definition of negligence, to state a cause of action the plaintiff must allege [1] the existence of a legal duty on the part of the defendant to protect the plaintiff from injury, [2] the failure of the defendant to perform this duty, and [3] that the injury or damage to the plaintiff resulted from such failure. Moransais v. Heathman, 744 So.2d 973, 975 n.3 (Fla. 1999); *see also* 21 Fla. Prac., Elements of an Action §54:1 (citing Fla. Dept. of Corrections v. Abril, 969 So.2d 201 (Fla. 2007)( Plaintiff must establish 1)  Duty:  Defendant owed a duty to the plaintiff; 2)  Breach:  Defendant breached his duty to the plaintiff; 3)  Causation:  Defendant's breach of his duty was the proximate cause of the damages suffered by the plaintiff; and 4)  Injury: [Plaintiff] suffered damages.)).  Here, Plaintiff's claims should be dismissed because Plaintiff cannot satisfy any element of the claims asserted against these Defendants.

*1.  Defendants Did Not Owe a Duty to Plaintiff*

"The determination of the existence of a duty of care in a negligence action is a question of law" to be determined by the Court.  Goldberg v. Florida Power & Light Company, 899 So.2d 1105, 1110 (Fla. 2005). Here, Plaintiff makes only the barest attempt to allege any duty on the part of Wiss, Janney to Plaintiff.  That attempt fails because the Complaint on its face shows that no duty to Plaintiff was contemplated by the City's retention of Wiss, Janney.  There is no allegation that the agreement between the City and Wiss, Janney was made for the benefit of Plaintiff, or that the parties to that agreement contemplated that Plaintiff would either benefit or rely upon their actions under the agreement.  Indeed, in this case Defendants were specifically

---

Id. at 1180.

8

14478747v1 911553 10902

hired to critique Plaintiff's work, not to benefit Plaintiff.  Only when parties are providing a benefit to the third party is any duty to a non-contractual party to be found.  As stated by the Court in City of Tampa v. Thornton-Tomasetti, P.C., 646 So.2d 279, 282 (Fla. 2d DCA 1994):

> It is true that in limited circumstances, professionals can be held liable to noncontractual parties for economic damages arising from professional negligence. [citations omitted].  As these cases make clear, liability is extended not to all who may be within the class of the foreseeably injured but only to distinct third parties **whose reliance upon documents or information furnished by the professional constituted the "end and aim of the underlying transaction."**

> [O]ur courts have been reluctant to expand the privity exception to an incidental third party beneficiary…Unless a contract is entered into for the direct and substantial benefit of a third party, it binds and benefits only the parties themselves. [citation omitted].  The intention of the contracting parties, gleaned from the contract itself, is determinative.

see also, Horizon Images, Inc. v. Delta Color Graphics, Inc., 639 So.2d 186 (Fla. 1994)("In order for a third party to maintain a breach of contract, the parties must have clearly intended the contract directly and substantially benefit the third party."); Technicable Video Systems, Inc. v. Americable of Greater Miami, 479 So.2d 810 (Fla. 3d DCA 1985)(same).

As the Complaint makes clear, the contract between the City and Wiss, Janney was *for the benefit of the City* and not Plaintiff.  Indeed, even from the allegations of the Complaint it is clear that the purpose was just the opposite – to investigate Plaintiff's work and determine whether it had been properly completed.  Clearly, the purpose of the City's contract was not for the " the direct and substantial benefit" of Plaintiff.  Instead, the contractual relationship between the City and Wiss, Janney was solely for the benefit of the City, and as a result, Defendants' duty was limited to the City.  *See* Downs v. Coastal Systems, International, Inc., 972 So.2d 258 (Fla. 3d DCA 2008).  In Downs, the plaintiff was an individual injured while diving off a pier.  Downs sued an engineer who had been hired by a City to evaluate beach erosion.  The plaintiff claimed

14478747v1 911553 10902

that the engineer had a duty to the general public to warn of dangerous conditions near the

coastline of Florida.  The court rejected that claim stating:

> As a threshold matter, [plaintiff] must first establish that [the engineer] owed him
> a duty to inform him of the existence of submerged rocks in the beach area where
> he sustained his injures. [citations omitted].  Nowhere in the record before us is
> there a contractual requirement on the part of [the engineer] to inspect the beach
> areas for any potentially hazardous rocks and inform anyone of such potential
> hazards. …  There is likewise no common law tort duty upon which [plaintiff]
> could recover against [the engineer].  A legal duty arises whenever a human
> endeavor creates a foreseeable risk of harm [citation omitted].  In light of the
> scope of the responsibilities DERM charged [the engineer], [the engineer] could
> not have foreseen all of the potential hazards posed for swimmers.

Id. at 261.

Additionally, under circumstances very similar to those here, the Court in Hawaii

Motorsports Investment, Inc. v. Clayton Group Services, 2009 WL 3109941 (D. HI. Sept. 25,

2009) also found that there was no duty owed by an engineer to the plaintiff.  In that case, the

intended purchaser of a raceway hired an engineer to do an environmental assessment of the

property.  After the assessment was completed, the purchaser refused to pay the previously-

agreed-upon price.  The parties to the contract renegotiated the contract and the property was

sold.  Thereafter, the seller sued the engineer for the lost value arguing that the assessment was

incomplete and erroneous.  The seller sought to allege claims of professional negligence and

negligent misrepresentation.  In rejecting the professional negligence claim on the basis of the

absence of any duty, the Court there stated:

> [The seller] has not alleged a relationship between [the engineer] and [the seller]
> that gives rise to a duty owed by [the engineer] to [the seller].  [The seller] only
> alleges that [the engineer] "prepared the report for [the buyer's] use in its
> negotiations with [the seller.]" …[The seller's] allegations at most go to whether
> [the seller] was an incidental beneficiary of the contract between [the buyer] and
> [the engineer].  If [the seller] is only an incidental beneficiary, [the engineer]
> owed it no duty as a consultant.

Id. at 3. That reasoning applies here. Wiss, Janney was hired *by the City* to review Plaintiff's work. Plaintiff cannot establish that Wiss, Janney had any duty to it in connection with Wiss, Janney's performance under that contract. Defendants owed no duty to Plaintiff, and Plaintiff's claims should be dismissed.

### 2. Defendants Did Not Breach Any Duty

Although Plaintiff attempts to allege a breach of duty in a very conclusory manner (¶21), those allegations are not sufficient. As with the element of duty, in order to establish its claim for professional negligence, Plaintiff must establish the Wiss, Janney deviated from the requisite standard of care owed to Plaintiff. As is discussed above, under the circumstances of this case, no duty was owed to Plaintiff, and Plaintiff therefore cannot establish a breach of any such duty.

### 3. Defendants Did Not Cause Any Harm Suffered By Plaintiff

Plaintiff has likewise failed to allege that any harm it suffered was **caused** by Wiss, Janney. In order to establish that a defendant's conduct was the "cause in fact" of a particular harm, the plaintiff usually must demonstrate that "but for'" defendant's conduct, the harm would not have occurred. Here, assuming that Plaintiff has any damages at all, Plaintiff has affirmatively established by its own allegations that any harm it suffered was *not* caused by these Defendants. Rather, setting aside that Plaintiff's harm may solely have been due to its own fault, Plaintiff has alleged that its damages were caused by the City's decision to require replacement of the water slide "due to its public disclosure" of Wiss, Janney's report. Complaint ¶15.

Furthermore, in paragraph 14 of the Complaint, Plaintiff asserts that after Wiss, Janney issued its report, Plaintiff disagreed with the report and independently obtained two additional reports which came to a different conclusion. Faced with two sets of reports – one set indicating that the water slide should be replaced and the other indicating it did not need replacement - the

11

City elected to proceed with replacement of the water slide.  It is apparent from those allegations alone that Plaintiff cannot establish that "but for" Wiss Janney's report, Plaintiff's alleged harm would not have occurred.  This is especially true where the decision to retain Wiss, Janney was made by the City upon its own motivations and not at the urging of Wiss, Janney.  Based on Plaintiff's own allegations, the City's decision to replace the water slide was not "caused" by the content of Wiss, Janney's report, but rather was caused by other internal determinations by the City.  Moreover, even if the fact that the Wiss, Janney report had been made public was somehow the deciding factor in the City's determination to replace the water slide, that public disclosure was effectuated by the City and not Wiss, Janney.[4]  Complaint ¶15.  As Wiss, Janney had no relationship to the City's decision to make the report public, it cannot be viewed as the cause of the City's decision to require replacement of the water slide.

### 4. *Plaintiff Is Not Entitled to Recover Damages from Defendants*

Although Plaintiff does not articulate it directly in its prayer for damages, it is clear from the content of the Complaint that the damages sought are the excess economic costs incurred by Plaintiff as a result of complying with its contract *with the City* by rebuilding and re-installing the water slide.  Complaint ¶16.  Plaintiff is not entitled to such damages under the facts of this case because solely economic damages are not available in tort where such arise out of a contractual relationship.  Having failed to allege – and indeed having refuted by its own contentions – all of the necessary elements for a claim of professional malpractice, Plaintiff's claims of such should be dismissed for failure to state a claim upon which relief can be granted.

---

[4] See also, Florida Statutes Chapter 119, the Public Record Law.

14478747v1  911553  10902

## V.  PLAINTIFF CANNOT STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION

It should first be noted that Florida Statutes section 768.81 defines "negligence" to include all claims for professional negligence, "whether couched in contract or tort."  Plaintiff's claims in Counts I and III sound in professional negligence.  To the extent Plaintiff attempts to state claims in professional negligence, then Plaintiff's negligent misrepresentation claims in Counts II and IV are duplicative and should be dismissed.  Alternatively, Plaintiff has not and cannot allege the elements necessary to state a claim for negligent misrepresentation and the claims should be dismissed on that basis as well.

Plaintiff claims for negligent misrepresentation are based on allegations that these Defendants "supplied information for the guidance of the City, RDC and other similarly situated third parties in their business transactions"; that "the information provided by [Wiss, Janney] … was false and/or materially inaccurate;" . . .  at the time of providing such false and/or materially inaccurate statements, [Wiss, Janney] *knew the City would rely* on such statements and supply same to [plaintiff]; . . .in performing such professional engineering services, . . . [Wiss, Janney] knew that the information provided would influence the City and have an impact on [plaintiff]; [plaintiff] suffered pecuniary damages in justifiable reliance on the false statements**."**  Complaint ¶¶24-29.  Those allegations fail to state a claim for negligent misrepresentation.

"To prove negligent misrepresentation, it must be shown that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and injury resulted **to a party acting in justifiable reliance upon the misrepresentation**."  Baggett v. Electricians Local 915 Credit Union, 620 So.2d 784, 786 (Fla.

14478747v1  911553  10902

2d DCA 1993)(emphasis added); <u>Coral Gables Distribution, Inc. v. Milich</u>, 992 So.2d 302, 303 (Fla. 3d DCA 2008) (citing <u>Baggett</u>); accord, <u>Tara Productions, Inc. v. Hollywood Gadgets, Inc.</u>, 2010 WL 1531489 at *9 (S. D. Fla. April 16, 2010).[5]

Plaintiff has not alleged that Wiss, Janney made any representations *to Plaintiff*, or that Wiss, Janney in any way intended to induce Plaintiff to do anything.  Plaintiff's claims of negligent misrepresentation also fail facially because it cannot establish the element of reliance. Instead, Plaintiff's own allegations admitted that it did **not** rely on anything said by Wiss, Janney. Rather, Plaintiff alleges the opposite – that it disagreed with the Wiss, Janney reports and obtained its own reports reaching a different conclusion.  Complaint ¶15.  The absence of any reliance by Plaintiff is fatal to Plaintiff's claims.

The Supreme Court of Florida has adopted § 552 of the Restatement (Second) of Torts as the standard to be applied to actions for negligent misrepresentation against professionals, including engineers.  See, <u>First Florida Bank v. Max Mitchell & Co.</u>, 558 So.2d 9 (Fla. 1990); <u>Bay Garden Manor Condominium Assoc., Inc. v. James D. Marks Associates, Inc.</u>, 576 So.2d 744, 746 (Fla. 3d DCA 1991)(applying section to engineers and stating "we do not believe the court intended to exclude other professionals who supply information for the purpose of guiding others in business transactions.").

Section 552 of the Restatement (Second) of Torts provides:

552. Information Negligently Supplied for the Guidance of Others.

---

[5]  See also, Fed R.Civ.P. 9(b) requiring Plaintiff to allege: (1) Precisely what statements were made in what documents or oral representations or what omissions were made, and (2)  The time and place of each such statement and the person responsible for making (or in the case of omission, not making) the same, and (3)  The content of any such statement and the manner in which they misled the plaintiff, and (4)  What the defendants obtained as a consequence of the [misrepresentation] and <u>Linville II v. Ginn Real Estate Co.</u>, LLC, 2010 WL 1063704 at 5. (M.D. Fla. March 10, 2010).

14478747v1  911553  10902

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.[6]

Applying that section, courts have refused to impose liability where there is no evidence that the person making the representation intended the claimant to rely upon any statement made by the person making the representation.  For example, in April Realty Ltd. v. Kulhanjian, 865 So.2d 525, 526 (Fla. 3d DCA 2003) a real estate purchaser sued a realtor who had asked him to look at a draft joint venture agreement.  In affirming dismissal of the claim, the court there stated:  "[T]here is no evidence showing that [the realtor] intended for [the purchaser] to rely upon the information contained in the proposal draft, much less that the misrepresentation was knowing and deliberate. . . . The lack of evidence showing that [the realtor] intended for [the purchaser] to rely on the proposal draft is also fatal to the claim for negligent misrepresentation."  Similarly, in Cooper v. Brakora & Associates, Inc., 838 So.2d 679 (Fla.2d DCA 2003) the

---

[6] See also, Florida Standard Jury Instruction 409.8 stating that the issues for determination on a claim for negligent misrepresentation are:  "First, whether (defendant) made a statement concerning a material fact that [it] believed to be true, but which in fact was false; Second, whether (defendant) was negligent in making the statement because [it] should have known the statement was false; Third, whether in making the statement (defendant) intended that another would rely on the statement; and Fourth, whether (claimant) justifiably relied on the false statement."

15

purchaser of a home sued an appraiser who had been hired by a bank for purposes of evaluating a

loan application.  The court there rejected the claim stating:

> [The bank] retained [the appraiser] to help it evaluate the risk that it might
> undertake by agreeing to loan this amount to [plaintiff].  Thus, the appraisal was
> not created to help [plaintiff] decide whether $165,000, which he had already
> contracted to pay, was a fair price.
>
> * * *
>
> The tort theory announced in section 552 could easily overwhelm the law of
> contracts if it is not a limited theory.  … Although the duties established by the
> law of negligence may play an appropriate role in commerce, section 552 will
> create great uncertainty unless the concept of a business transaction is narrowly
> defined.  Accordingly, the "transaction" associated with an appraisal that is
> obtained purely for financing purposes after a contract for sale has been executed
> is the loan transaction.  To permit section 552 to create a tort claim against a
> residential appraiser under the circumstances of this case would expand the
> meaning of "transaction" beyond that contemplated in the ordinary business
> relationship within which an appraisal of a lender is performed.

Id. at 682.  The same rule has been applied even in the context of an audit.  In Bank of North

Georgia v. Reznick Group, P.C., 262 Fed. Appx. 928, 929 (11th Cir. 2008), the court rejected a

negligent misrepresentation claim by a bank against an auditor who had performed the audit for a

different, prior lender.  The court there stated:

> Unlike [the facts in other cases] there is no non-conclusory allegation in this case
> that the defendant knew that the instant audit would be relied upon by a limited
> class of lenders other than Merrill Lynch.  To the contrary, the complaint and the
> documents attached thereto demonstrate that the purpose of the audit was to
> submit it to Merrill Lynch in compliance with the loan agreement.  … It is true
> that as a matter of general experience any accountant would know that the line of
> credit would have to be renewed, refinanced or otherwise handled when it expired
> and thus any accountant or businessman would know that there is some possibility
> that the line of credit would be refinanced by another lender.  **However, … such
> a future possibility is merely foreseeable, which is insufficient to sustain
> plaintiff's claim** under Georgia law [which is identical to Florida law].

Similarly, in Herons Cove Enterprises, LLC v. Epic Consulting, Inc., 2008 WL 2915066 at * 5

(M.D. Fla. July 25, 2008)(emphasis added), the purchaser of real property sued a consultant

which had been hired by the purchaser's own capital advisor to report on the condition of the

property.   The court there dismissed the claim of negligent misrepresentation by applying Section 552 and finding: "[a]s to [the] crucial element [of reliance] of the claim, however, [plaintiff] has failed to allege 'plausible' facts suggesting that [the consultant] knew [plaintiff] would rely on the Reports, particularly in light of the lack of any language on the face of the Reports or engagement letter indicating [plaintiff's] reliance."

In Florida Orthopedics, Inc. v. American Ins. Co., 896 So.2d 1 (Fla. 3d DCA 2004) the court rejected a similar claim by an employer who attempted allege a claim of negligent misrepresentation against a professional liability insurer which had insured an insolvent group health insurer.  After listing the elements necessary for such a claim, the court stated:

> [W]e conclude that [the employer] cannot establish its claim as a matter of law under the test set forth in the Restatement.  First of all, [the professional liability insurer] is in the business of selling insurance, and is not in the business of supplying information to third persons about its insureds' business qualifications. Further, [the professional liability insurer] had no pecuniary interest in its insured's transactions with [the employer]. … [The employer also] cannot be deemed a person for whose benefit and guidance [the professional liability insurer] 'intended' to supply information.

Id. at 4.

As in all of the foregoing cases, the information provided by Wiss, Janney to the City was not provided for the purpose of inducing Plaintiff to act.  Wiss, Janney had no pecuniary interest in the transaction between Plaintiff and the City and there is no circumstance under which it can be argued that Wiss, Janney intended Plaintiff to rely upon its report.  Rather, the report was provided for purposes of the City making a determination as to the quality of Plaintiff's work, and nothing alleged in the Complaint supports a viable claim for negligent misrepresentation.

Moreover, to the extent that Plaintiff intends to rely in any way upon the fact that other engineers reached different conclusions than Wiss, Janney, a negligent misrepresentation claim on that basis must be dismissed as well.  As held in Reamco Development Corp. v. 499 Corp.,

17

992 So.2d 431 (Fla. 4th DCA 2008), expressions of opinion do not rise to the level of "false information."   There, the intended buyer of real property sued a title insurer for providing information as to the expiration of the due diligence period.   After determining that the claim failed because title insurer had been retained only to provide insurance and not to provide legal advice about the due diligence period, the court went on to state:  "[t]he problem with the buyer's theory of recovery is that the letter does not contain 'false information,' but rather the expression of a belief as to when the due diligence period expired with an explanation of how the author of the letter reached that conclusion."

Other courts have found similar claims subject to dismissal.  On facts almost identical to those here, the New Hampshire Supreme Court upheld dismissal of similar claims of negligent misrepresentation.  In Plourde, 917 A.2d 1250 (N.H. 2007), discussed above, the court rejected the plaintiff's claim of negligent misrepresentation against engineers who had been hired by a town to inspect gravel provided by plaintiff for a private road stating:

> [T]his case does not give rise to a claim for negligent misrepresentation.  The defendant's only communication regarding the quality of the gravel was to [the town].   … While [the town] may have relied upon the report made by the defendant, the plaintiff does not claim, nor can it, that *it* relied upon the report.  Because there was no reliance by the plaintiff, the plaintiff cannot maintain a claim for negligent misrepresentation.  See, Restatement (Second) of Torts §552. [citation omitted].
>
> We will not expand the elements of negligent misrepresentation to include a scenario where reliance by *anyone* directly or indirectly involved may be imputed to the plaintiff so as to permit the plaintiff to maintain a cause of action.

Id. at 800.

A similar result was also reached in Hawaii Motorsports Investment, supra, 2009 WL 3109941 (D. HI. Sept. 25, 2009).  As in this case, the plaintiff/seller attempted to allege a negligent misrepresentation claim by contending that the engineer who inspected the property for

18

the buyer "knew that its environmental assessment was to be used in the land transaction between [the seller and the buyer], and that it would influence the transaction."  Id. at 6.  In rejecting the claim of negligent misrepresentation against the engineer, the court stated at 6:

> While [the seller] alleges that the sale of property to [the buyer] would benefit [the seller], [the seller] does not allege that the report prepared by [the engineer], or information supplied in the report was intended to benefit [the seller]. … The court does not read these allegations as stating that [the seller] was the person for whose benefit [the engineer] supplied the information. … [The seller's] purported reliance was in the form of accepting [the buyer's] reliance.  The allegations do not clearly suggest that [the engineer] knew that [the buyer] would transmit the report to [the seller] or that [the seller] was an intended beneficiary.

Plaintiff's claims here are of the same nature.  In essence, Plaintiff is alleging that the City relied upon Wiss, Janney's report and that the City's reliance had an impact upon Plaintiff.  That is not a sufficient basis upon which to impose liability upon Wiss, Janney for Plaintiff's disappointed economic expectations arising out of Plaintiff's separate contract with the City.  In order to impose such liability, Plaintiff would need to allege that Wiss, Janney and the City intended that Plaintiff rely upon the Wiss, Janney report, and that Plaintiff in fact did so.  Because the facts alleged by Plaintiff show that neither such intent nor such reliance occurred, Plaintiff's claims for negligent misrepresentation fail to state a claim, and this Court should dismiss the claims against Wiss, Janney with prejudice.

## CONCLUSION

Based on the foregoing, the face of the Complaint shows that plaintiff has not alleged and cannot demonstrate any of the elements of the two claims alleged in this case – professional malpractice and negligent misrepresentation.  Under those circumstances, the Complaint should be dismissed for failure to state a claim.

19

14478747v1 911553 10902

CASE NO: 1:10-cv-21549-ASG

WHEREFORE, Defendants, WISS, JANNEY, ELSTNER ASSOCIATES, INC. and JOHN F. DUNTEMANN, respectfully request that the claims against them be dismissed, judgment be entered in favor of Defendants, and further request that this Court order any additional relief in favor of Defendants that this Court deems just and appropriate.

          *David P. Hartnett*
          David P. Hartnett
          Florida Bar No. 946631
          dhartnett@hinshawlaw.com
          Monica T. Cronin
          Florida Bar No. 0599883
          mcronin@hinshawlaw.com
          HINSHAW & CULBERTSON LLP
          9155 S. Dadeland Boulevard- Suite 1600
          Miami, Florida 33156-2741
          Telephone: 305-358-7747
          Facsimile: 305-577-1063

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2010, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day, in the manner specified below, on all counsel of record identified on the attached Service List.

Thomas R. Shahady, Esquire,
Adorno & Yoss, LLP,
350 East Los Olas Blvd, Suite 1700,
Ft. Lauderdale, FL 33301
Attorneys for Plaintiff
Email: tshahady@adorno.com
Tel: 954-763-1200
Fax: 954-766-7800

          /s/*David P. Hartnett*
          David P. Hartnett

14478747v1 911553 10902